UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

RICHARD ALAN FOLDEN,

Petitioner,

v.

DAVID CRIST,

Respondent.

Civil No. 01-2031 (ADM/JGL)

REPORT AND RECOMMENDATION

THIS MATTER is before the undersigned United States Magistrate Judge on Petitioner's application for habeas corpus relief under 28 U.S.C. § 2254. These proceedings have been referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons stated below, it is recommended that the petition be dismissed with prejudice pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts.[1]

## I. BACKGROUND

In 1993, Petitioner was convicted of first degree criminal sexual conduct for sexually abusing his daughter. He received a mandatory sentence of 444 months, and he is presently serving his sentence at the Minnesota Correctional Facility in Oak Park Heights, Minnesota.

[1] The applicable language in Rule 4 provides as follows:

"If it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified."

FILED 11-9-01
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Following his conviction and sentence, Petitioner filed a direct appeal challenging the sufficiency of the evidence used to convict him. The Minnesota Court of Appeals rejected Petitioner's arguments and affirmed his conviction and sentence on January 26, 1994. Petitioner's direct appeal was completed on March 15, 1994, when the Minnesota Supreme Court denied his petition for further review.[2]

After his direct appeal was complete, Petitioner pursued three separate collateral challenges to his conviction and/or sentence in the Minnesota state courts.

First, on April 7, 1997, he filed a post-conviction motion claiming that

> "(1) his sentence violated the Double Jeopardy clause and constituted cruel and unusual punishment, (2) the conviction was inconsistent with his acquittals [on other related charges], and (3) his trial counsel was ineffective."

Folden v. Minnesota, No. C8-97-1244 (Minn.App. 1997), 1997 WL 793306 (unpublished opinion) at * 1. The trial court summarily rejected all of Petitioner's claims, and the Minnesota Court of Appeals affirmed the trial court's ruling. Id. Petitioner apparently did not seek further review in the Minnesota Supreme Court, so his first post-conviction action became final on the date of the Court of Appeals' decision – December 30, 1997.

Petitioner filed his second post-conviction motion in October 1999 -- nearly two years after the Court of Appeals upheld the denial of his first such motion. This time Petitioner argued that

> "the district court erred by (a) sentencing him with 'judicial biasness/presence' in violation of his due-process and equal-protection rights; (b) allowing 'vindictive prosecution' to influence the conviction and length of sentence; and (c) sentencing him 'in lieu of attorney-client conflict,

---

[2] The history of Petitioner's conviction, sentencing and direct appeal is reported at Folden v. State, No. C0-01-31 (Minn.App. July 17, 2001), 2001 WL 800025 (unpublished opinion).

> and possible coercion between counsel and tribunal to obtain sentencing courts conviction.'"

Folden v. State, C9-99-1905 (Minn.App. 2000), 2000 WL 1100108 (unpublished opinion) at *1. The trial court once again summarily denied Petitioner's post-conviction motion, and the Minnesota Court of Appeals once again affirmed. Id. Petitioner sought further review in the Minnesota Supreme Court, but his request was denied on October 5, 2000, so his second post-conviction action became final on that date.

Finally, on August 18, 2000, Petitioner filed a motion "to vacate, set aside or correct his sentence, claiming that his sentence was unlawful under the recent decision of Apprendi v. New Jersey, 530 U.S. 466... (2000)." Folden v. State, No. C0-01-31 (Minn.App. 2001), 2001 WL 800025 (unpublished opinion) at * 1. That motion also was denied by the trial court. Petitioner then filed another appeal, and the Minnesota Court of Appeals upheld Petitioner's sentence (for the fourth time). Id. By order dated August 22, 2001, the Minnesota Supreme Court declined to review the Court of Appeals' latest decision.

Petitioner's present application for federal habeas corpus relief is dated November 5, 2001, and was filed two days later on November 7, 2001. The instant petition lists three grounds for relief, which appear to be the same three grounds raised in Petitioner's second state post-conviction motion, i.e.:

> (1) "[s]entencing court erred when it sentenced petitioner in presence of 'judicial biasness/prejudice', in direct violations of petitioner's rights to due process and equal protection;"
>
> (2) [s]entencing court erred when it in fact allowed 'vindictive-prosecution' to influence its conviction and length of actual sentence;" and

> (3) "[s]entencing court erred when it sentenced petitioner in lieu of 'attorney-client', and possible coercion between counsel and tribunal to obtain sentencing courts conviction."

(Petition, [Docket No. 1], pp. 3-4.) None of these claims will be addressed on the merits, however, because the Court finds that the petition was not filed within the time limit prescribed by 28 U.S.C. § 2244(d). Instead, it will be recommended that the petition be summarily dismissed with prejudice because it is time-barred.

## II. DISCUSSION

On April 24, 1996, President Clinton signed the Anti-terrorism and Effective Death Penalty Act ("AEDPA"), which effected significant changes in the federal habeas corpus statutes. One of those changes appears at 28 U.S.C. § 2244(d), which establishes a one-year statute of limitations for habeas corpus petitions filed by state prisoners seeking federal court review of a conviction or sentence. This new statute provides that:

> "**(d)(1)** A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> **(d)(2)** The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

In this case, there is nothing on the face of the petition to suggest that clauses (B), (C) or (D) of § 2244(d)(1) would have any applicability. In other words, there is no indication that the state created any impediment that prevented Petitioner from seeking federal habeas relief within the prescribed one-year limitation period, nor is there any indication that Petitioner's claims are based on any newly-recognized constitutional right or any new evidence that could not have been discovered earlier. Thus, the one-year statute of limitations began to run in this case, pursuant to § 2244(d)(1)(A), when Petitioner's judgment of conviction "became final by the conclusion of direct review or the expiration of the time for seeking such review."

Petitioner's conviction became final on direct review in 1994, when the Minnesota Supreme Court denied his application for further review in connection with his direct appeal.[3] The Eighth Circuit Court of Appeals has held, however, that the statute of limitations set forth at § 2244(d)(1) never begins to run any earlier than the date when the statute was enacted, which was April 24, 1996. Nichols v. Bowersox, 172 F.3d 1068, 1073 (8th Cir. 1999). Therefore, although Petitioner's conviction became final, for purposes of § 2244(d)(1), in 1994, the one-year statute of limitations did not actually begin to run in this case until April 24, 1996.

Petitioner did not file his present petition, however, until November 7, 2001, which was more than five and a half years after the statute of limitations began to run in this case,

---

[3] Although the State Supreme Court denied Petitioner's application for further review (on the direct appeal) on March 15, 1994, his conviction did not actually become final, for statute of limitations purposes, until 90 days later when the deadline expired for seeking certiorari review in the United State Supreme Court. See Smith v. Bowersox, 159 F.3d 345 (8th Cir. 1998) (state criminal convictions not final for statute of limitations purposes until the deadline for seeking certiorari has expired), cert. denied, 525 U.S. 1187 (1999).

and more than four and a half years after the one-year limitation period expired. Thus, the instant petition is clearly time-barred, and it cannot be entertained at this late date.

The Court has considered the effect of 28 U.S.C. § 2244(d)(2), which stops the statute of limitations from running while state post-conviction proceedings are pending. However, the tolling provisions of § 2244(d)(2) cannot save the instant petition. Applying § 2244(d)(2) here, the Court finds that the statute of limitations ran, and was tolled, as follows:

The statute of limitations first began to run (as discussed above) on the date when the statute was enacted -- April 24, 1996. The statute ran from that date until it was tolled by the filing of Petitioner's first state post-conviction motion on April 7, 1997. Before that first tolling the statute had run for 348 days -- from April 24, 1996, to April 7, 1997. The statute of limitations was tolled during the entire time that Petitioner's first post-conviction motion was pending, including the time when the motion was pending before the Court of Appeals. See Mills v. Norris, 187 F.3d 881, 883-84 (8th Cir. 1999) (statute remains tolled during the entire period of time that post-conviction proceedings are pending in any of the state courts, including state appellate courts). However, the statute of limitations began to run again on December 30, 1997, when the Court of Appeals upheld the trial court's denial of the first post-conviction motion.

The statute was not tolled again until October 1999, when Petitioner filed his second post-conviction motion. By that time, the statute had been running for at least another 639 days -- from December 31, 1997, to October 1, 1999.[4] Petitioner was continuously

[4] In its decision in Petitioner's second post-conviction action, (Folden v. State, No. C9-99-1905 (Minn.App. 2000), 2000 WL 1100108 (unpublished opinion)), the Minnesota

pursuing state post-conviction relief, and the statute of limitations therefore remained continuously tolled, from October 1999, until August 22, 2001, when the Minnesota Supreme Court rejected Petitioner's most recent application for further review.[5] The statute of limitations then began to run again on August 22, 2001, and it continued to run for another 74 days until it was finally stopped on November 5, 2001, when Petitioner is deemed to have filed his current petition.[6]

Thus, the statute of limitations ran in this case for a total of at least 1061 days -- 348 days between April 24, 1996, and April 7, 1997; plus at least 639 days between October 1999 and August 22, 2001; plus 74 days between August 22, 2001, and November 5, 2001. Needless to say, the 1061 days that the statute of limitations actually ran in this case far exceeds the one-year limitation period prescribed by § 2244(d)(1). Therefore, even when all possible tolling periods are taken into consideration, the instant petition is clearly

---

Court of Appeals reported that the second post-conviction motion was filed in October 1999. Because the Court of Appeals did not indicate the exact date when that motion was filed, this Court will give Petitioner the benefit of the doubt and assume that he filed it on the very first day of October. (If he filed it later in the month, the statute of limitations remained untolled even longer than the 639 days stated in the text.)

[5] The statute of limitations was not tolled during the 90-day period following the State Supreme Court's final decision in the post-conviction proceedings, when Petitioner could have applied for a writ of certiorari from the U.S. Supreme Court. Snow v. Ault, 238 F.3d 1033, 1035-36 (8th Cir.), cert. denied, 121 S.Ct. 1663 (2001).

[6] Although Petitioner's original habeas petition was not actually filed by the Clerk of Court until November 7, 2001, he is entitled to the benefit of the "prison mail-box rule." See Nichols v. Bowersox, 172 F.3d 1068, 1077 (8th Cir. 1999) ("a pro se prisoner's petition for a writ of habeas corpus is filed on the date it is delivered to prison authorities for mailing to the clerk of the court"). Petitioner executed his original petition on November 5, 2001, so that obviously is the earliest date when he could have given it to prison officials for mailing. Thus, for purposes of § 2244(d), the present petition is deemed to have been filed -- and the statute of limitations finally stopped running in this case – on November 5, 2001.

untimely.[7]

Because it plainly appears that Petitioner's present habeas corpus petition is time-barred pursuant to 28 U.S.C. § 2244(d), the Court recommends that this action be summarily dismissed pursuant to Rule 4. Moreover, because Petitioner is now statutorily ineligible for federal habeas corpus relief, it is further recommended that the action be dismissed with prejudice.

---

[7] Petitioner might believe that a post-conviction motion does more than just temporarily stop the statute of limitations from running while the post-conviction proceedings are pending. He may think that filing a post-conviction motion actually 'resets the clock,' so that a prisoner gets a fresh new one-year limitation period that does not begin until the state post-conviction proceedings are completed. That, however, is simply not the case. See Painter v. Iowa, 247 F.3d 1255, 1256 (8th Cir. 2001) ("the time between the date that direction review of a conviction is completed and the date that an application for state post-conviction relief is filed counts against the one-year period").

As explained in Sorce v. Artuz, 73 F.Supp.2d 292, 294 (E.D.N.Y. 1999):

> "The tolling provision of AEDPA does not allow the one year period to run anew each time a post-conviction motion is ruled upon. Instead, the toll excludes from the calculation of the one year period any time during which post-conviction relief is pending. [Citation omitted.] Thus, the provision stops, but does not reset, the clock from ticking on the time in which to file a habeas petition. It cannot revive a time period that has already expired."

See also Lucidore v. New York State Div. of Parole, No. 99 CIV 2936 AJP, (S.D.N.Y. 1999), 1999 WL 566362 at * 4 ("Section 2244(d) does not state that the AEDPA's one-year statute begins to run anew after decision on a state collateral attack; such an interpretation would allow an inmate to avoid the effect of the AEDPA's one-year [statute] of limitations by bringing a belated state collateral attack"), aff'd 209 F.3d 107 (2nd Cir.), cert. denied, 121 S.Ct. 175 (2000); Broom v. Garvin, 99 Civ. 1083 (JSM) (S.D.N.Y. Apr. 26, 1999), 1999 WL 246753 at *1 ("the filing of a collateral attack in the state court tolls the AEDPA statute of limitations during the period that it is pending, but it does not commence a new limitations period").

## III. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Petitioner's application for a writ of habeas corpus, (Docket No. 1), be DENIED;

2. This action be DISMISSED WITH PREJUDICE.

Dated: November 9, 2001

JONATHAN LEBEDOFF
United States Magistrate Judge

Under D.Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by NOV 29, 2001, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.